# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ARQUINCY LEE CARR,

    Plaintiff,

    v.                                                                    Case No. 10-C-997

DAVID BETH, MONICA HOFF,
JULIE BRODSKO, DENISE MOLITOR,
JIM KAISER, STEVE RAE,
MATT BURNHART, and THOMAS CARRIAO,

    Defendants.

# ORDER

The plaintiff, who is currently incarcerated at the Kenosha County Detention Center, filed a pro se complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the court on the plaintiff's petition to proceed in forma pauperis. The plaintiff has paid an initial partial filing fee of $5.50. See 28 U.S.C. § 1915(b)(1). The plaintiff has also consented to the exercise of jurisdiction by a magistrate judge.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts should follow the principles set forth in Twombly by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950. Legal conclusions must be supported by factual allegations. Id. If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of North Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

The plaintiff was detained at the Kenosha County Jail at all times relevant. He alleges that on September 28, 2010, correctional officers forcefully pushed an overweight inmate into a holding cell, and defendant Monica Hoff verbally harassed the inmate based on his weight. Upon observing these actions, the plaintiff told defendant Hoff she was unprofessional, and Hoff responded by calling the plaintiff names and pointing OC spray into the holding tank to intimidate the plaintiff. The plaintiff subsequently "flooded the holding tank." (Compl., Ex. A.) He was then taken to segregation because:

> Mr. Carr, You are being segregated because you have a behavior problem and like to flood your cell. You are being housed in ad seg to provide a higher degree of safety to our staff. Flooding creates a fall hazard not to mention unsanitary conditions. If and when your behavior improves you may be considered for placement in general population. Your behavior must improve however before things will get better. Truth of the matter is you have been very disrespectful to staff and supervision. Respect is required to get respect. Cooperation is the key.

(Compl., Ex. A.)

The plaintiff also alleges that on October 8, 2010, he filed a grievance based on his belief that defendant Hoff denied him a roll of toilet paper while he was in a holding tank waiting for court. According to the plaintiff, he pushed the medical emergency button, and he believes Hoff responded over the speaker to not push the button unless there was a medical emergency. The plaintiff pushed the button again and reported that his toilet was overflowing, which was not true. He then looked out of the door and observed a correctional officer coming with a roll of toilet paper. The plaintiff was written up for stating he flooded his cell.

On October 14, 2010, defendant Burnhart denied the plaintiff a phone call to defendant Corporal Carriao, even though the plaintiff needed to speak to him. The plaintiff threatened to flood his cell, and Burnhart then cut off his cold water and his toilet, but left the hot water on. Defendant Burnhart also denied the plaintiff his attorney visit that day, based on the incident. He also denied the plaintiff's request for toilet paper.

Next, the plaintiff alleges:

> 10/18/10 Plaintiff was harassed, accused of talking to an inmate worker. As plaintiff was on phone with SPD's office, CO's Debbie, CO Johnson, CO Molitor, came to escort him back to cell. CO Molitor yelled, "hang up the phone." Carr advised her that he was on hold. She said, "if you were on the phone, you wouldn't be screaming." Carr ignored her, and when SPD came on line, he asked her to repeat what she told him and removed the phone from his ear to let CO's hear someone on phone. He was unhandcuffed per Molitor and he told him how he felt, she ignored

4

him, until he reached the door and stepped into the hallway, in which she yelled, "just keep moving," Carr turned his head said, "what," she grabbed his upper arm very roughly and squeezed it, which Carr jerked his arm away and turned to face his attacker, whom grabbed O.C. spray. He turned around to walk to his cell, was let and locked in cell, whereas Molitor flipped him off.

. . .

10/19/10 Plaintiff was yelled at by a CO Julie Brodsko, after he verbally asked her approximately 2-3 times to use the phone, as she cut him off each time. She also refused to take his requests that were in the door, despite the fact that he did put them there after breakfast and she had done close to 4 rounds. She yelled, "when you can ask me nicely, I will let you use the phone!" Carr asked her to call Cpl, she did not. He flooded his cell, but no one knew due to his blanket under the door, his water was cut off per Cpl. Kaiser. Carr was taken to a holding cell, in which he took his legal work and flooded the holding cell as well, whereas the toilet was off, but the sink worked. Later on he was taken back to cell, where all his belongings were seized, no mattress, no hygiene, no blanket, no necessities at all. Carr was in a suicide room, without the gown. He was not allowed to brush teeth for a couple of days, no toilet functioning, etc.

(Compl. at 4-5.)

Next, the plaintiff alleges that on October 24, 2010, Officers Bezotte and May took him from his cell for a mental health visit with his therapist. Upon return, the plaintiff's cell was in disarray, his mattress was overturned, and legal folders/manila envelopes were ripped. As the officers left, one officer handed the plaintiff his Jailhouse Lawyer's Handbook, which had been in one of the plaintiff's legal envelopes marked legal. The officer stated he was returning it due to it not being contraband.

The plaintiff also alleges that on October 28, 2010, defendants Hoff and Brodsko escorted him to court and, after court, he was speaking to an officer as he waited to be escorted back upstairs. Defendant Brodsko asked the plaintiff, in a rude tone, if he had any business there, which made the plaintiff leave the station and go to a holding cell. The plaintiff asked Vicki if someone else could

5

escort him back upstairs, because he did not want to be around Brodsko at this time. As Hoff came to assist the escort and the two officers came to retrieve the plaintiff, Vicki inadvertently opened the plaintiff's cell. Both officers yelled at her to close the door and were looking at her, the plaintiff turned his head, and Hoff pushed him in the chest with two hands and yelled, "don't walk out of cell!" The plaintiff never attempted to walk out and he yelled, "don't ever put your hands on me again! You pushed me for no reason, I'm pressing charges!" Brodsko handcuffed the plaintiff and called Corporals Kaiser and Besina, and Sergeant Willsted. The plaintiff informed them he wanted to press charges because Hoff pushed him. The plaintiff was advised to stay calm, which he did, he was restrained, and Hoff and Brodsko escorted him. Hoff tried to walk as fast as possible, cutting the plaintiff's ankles with shackles.

The plaintiff claims that the defendants, through the above-described allegations, have taken actions to "punish" him and that such actions are barred since is a pretrial detainee. He seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

**DISCUSSION**

The court construes the complaint as advancing claims based on conditions of confinement, excessive force, due process for placement in segregation, and the search of his cell.

A pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to heard. <u>Higgs v. Carver</u>, 286 F.3d 437, 438 (7th Cir. 2002) (citing <u>Rapier v. Harris</u>, 172 F.3d 999, 1004-05 (7th Cir. 1999)). But no process is required if he is placed in segregation not as punishment but for managerial reasons or because he is considered a suicide risk. <u>Id.</u> (citations omitted). Likewise, a hearing is not required if a pretrial detainee is placed in segregation to protect himself from other prisoners, or to protect jail staff from

6

him. Id. (citing Bell v. Wolfish, 441 U.S. 520, 547 (1979)). As long as the purpose is a preventive rather than a punitive one, he would not be entitled to notice and a hearing. Id.

It is not clear from the complaint whether the plaintiff received a hearing prior to placement in segregation. The plaintiff alleges he was placed in segregation for repeatedly flooding his cell, and attachments to the complaint, which indicate that his placement was for institution security and not for punishment, support the allegations. The plaintiff therefore does not state a due process claim. See Zarne v. Rhodes, 64 F.3d 285, 291 (7th Cir. 1995) (defendant's decision to segregate detainee for "unacceptable conduct" lacked punitive intent because context of statement showed that the conduct posed a security threat).

Since he is a pretrial detainee, the plaintiff's challenge to his conditions of confinement is governed by the constitutional guarantee of due process, rather than the Eighth Amendment, which is applicable to convicted prisoners. See Bell, 441 U.S. at 535; Hart v. Sheahan, 396 F.3d 887, 891 (7th Cir. 2005). The proper question to guide determination of the constitutionality of restrictive conditions in pretrial detention is "whether those conditions amount to punishment of the detainee." Hart, 396 F.3d at 891 (quoting Bell, 441 U.S. at 535). "'Punishment' in such a case is really just a name for unreasonably harsh treatment meted out to inmates who have not yet been convicted of any crime." Id. at 892. For example, in May v. Sheahan, 226 F.3d 876, 884 (7th Cir. 2000) (citation omitted), a case concerning the conditions in which inmates were held in the Cook County Jail, the court stated that "[t]he use of bodily restraints constitutes punishment in the constitutional sense if their use is not rationally related to a legitimate non-punitive government purpose or they appear excessive in relation to the purpose they allegedly serve."

Pretrial detainees have greater rights than convicted prisoners in that they cannot be punished, except for violations of jail rules or other offenses committed at the jail. Hart, 396 F.3d at 893 (citing Rapier v. Harris, 172 F.3d 999, 1003 (7th Cir. 1999)). Punishment requires a conviction. Id. However, "when the issue is whether brutal treatment should be assimilated to punishment, the interests of the prisoner is the same whether he is a convict or a pretrial detainee." Id. In either case, he "has an interest in being free from gratuitously severe restraints and hazards, while the detention facility has an interest in protecting the safety of inmates and guards and preventing escapes." Id.

The plaintiff's challenge to his conditions of confinement is based on allegations that on October 19, 2010, he flooded his cell after defendant Brodsko told him he could only use the phone if he asked nicely. He was taken to a holding cell, and he flooded the holding cell as well. Next, he was taken back to his cell and all of his belongings had been seized and he was not allowed to brush his teeth for a couple of days nor did his toilet function. However, although the denial of toothpaste for a long period of time may violate the Constitution because it can result in objectively serious harm to future health, Board v. Farnham, 394 F.3d 469, 482-83 (7th Cir. 2005), the denial of toothpaste for ten days is not sufficient to state an Eighth Amendment claim, see Harris v. Fleming, 839 F.2d 1232, 1234-35 (7th Cir. 1988).

Because he is a pretrial detainee, the plaintiff's excessive force claim also arises under the Fourteenth Amendment. Forrest v. Prine, 620 F.3d 739, 743-44 (7th Cir. 2010) (citations omitted). The right to due process under the Fourteenth Amendment "provides at least as much, and probably more, protection against punishment as does the Eighth Amendment's ban on cruel and unusual punishment." Id. at 744 (citing Lewis v. Downey, 581 F.3d 467, 475 (7th Cir.2009)). However, absent explanation how any protections guaranteed by the Fourteenth Amendment provide more

protection than a pretrial detainee would receive under traditional Eighth Amendment standards, the court borrows Eighth Amendment standards to analyze such claims. Id. (citing Lewis, 581 F.3d at 475).

"The unnecessary and wanton infliction of pain on a prisoner violates his rights under the Eighth Amendment." Id. (quoting Lewis, 581 F.3d at 475) (internal quotation omitted). Force used in "a good-faith effort to maintain or restore discipline," does not rise to the level of being unnecessary and wanton. Hudson v. McMillian, 503 U.S. 1, 7 (1992). Only force intended "maliciously and sadistically to cause harm" to the prisoner falls under the standard. Id. Several factors are relevant in determining whether a defendant applied force in good faith or for purposes of causing harm, including the need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of the force, and the extent of the injury caused by the force. Forrest, 620 F.3d at 744-45 (quoting Lewis, 581 F.3d at 477).

The plaintiff claims that excessive force was used against him when defendant Denise Molitor grabbed his arm roughly and squeezed it and also when defendant Monica Hoff pushed him in the chest with two hands back into his cell after his cell door was accidently opened. Based on the standard set forth above, neither of these incidents rise to the level of a constitutional violation.

Finally, the plaintiff is challenging the search of his cell. In Block v. Rutherford, 468 U.S. 576, 585-91 (1984), the Court held that the Fourteenth Amendment did not bar jail officials from denying pretrial detainees "contact visits" and conducting unannounced "shakedown searches" of their cells. Expanding upon the language in Bell, the Block Court described the courts' role in jail administration as "very limited." Block, 468 U.S. at 584. "[W]e have emphasized that we are unwilling to substitute our judgment on these difficult and sensitive matters of institutional

9

administration and security for that of [prison or jail administrators]." Id. at 588. This language certainly applies to a search of plaintiff's cell for contraband.

In sum, this plaintiff has provided no arguable basis for relief, having failed to make any rational argument in law or fact to support his claims. See House v. Belford, 956 F.2d 711, 720 (7th Cir. 1992) (quoting Williams v. Faulkner, 837 F.2d 304, 308 (7th Cir. 1988), aff'd sub nom. Neitzke v. Williams, 490 U.S. 319 (1989)). Basically, plaintiff does not like the way he has been treated. But, as a pretrial detainee, what he characterizes as uncivil or harsh conduct does not rise to the level of a violation of any of his constitutional rights.

## ADDITIONAL MATTERS

Along with his complaint, the plaintiff filed a motion for appointment of counsel. He asserts that his imprisonment will greatly limit his ability to litigate complex issues which will require significant research and investigation. He says he has limited access to the law library and limited knowledge of the law. Based on the court's conclusion regarding the merits of his claims, this motion is moot.

On January 10, 2011, the plaintiff filed a motion to consolidate this case with Case No. 10-cv-1017, which is also before this court. However, the complaint in that case shall be dismissed as of this date for failure to state a claim and, therefore, the plaintiff's motion is moot.

On January 10, 2011, the plaintiff filed a motion for leave to file an amended complaint to include allegations he failed to mention previously. According to the plaintiff, Cpt. Besina was present at the ordeal with Monica Hoff and Jim Kaiser, when the plaintiff was verbally abused, but Besina failed to intervene. The plaintiff further states that defendant Besina has engaged in unethical practices "which harasses plaintiff as well as violates numerous rights" and he will produce

documentation of the defendants' poor work ethics. However, "simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the law." DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000); see also Dobbey v. Ill. Dep't of Corr., 574 F.3d 443 (7th Cir. 2009). The plaintiff's proposed amendment does not state a claim and therefore it would be futile to allow him to amend the complaint.

On January 21, 2011, the plaintiff an motion for injunction/temporary restraining order to enjoin the defendants from "harassing, taunting, cell searches, illegal seizures, teasing, threats, unfair due process procedures, lying, and any other acts the court deems fit." He further requests that the court restrain the defendants from "carrying OC spray, handcuffs, RIPP belt, harassing, taunting plaintiff's person or verbal abuse, mental abuse, stay 15 feet from plaintiff." However, based on the dismissal of the complaint for failure to state a claim, this motion is also moot.

## ORDER

**IT IS THEREFORE ORDERED** that the plaintiff's motion for leave to proceed in forma pauperis (Docket #5) be and hereby is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the plaintiff's second motion for leave to proceed in forma pauperis (Docket #8) be and hereby is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion to appoint counsel (Docket #2) be and hereby is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the plaintiff's motion to consolidate cases (Docket #13) be and hereby is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for leave to file an amended complaint (Docket #18) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for injunction/TRO (Docket #20) be and hereby is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has brought an action that was dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. §1915(g).

**IT IS FURTHER ORDERED** that the Kenosha County Sheriff or his designee shall collect from the plaintiff's prison trust account the $344.50 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**IT IS FURTHER ORDERED** that copies of this order be sent to the Kenosha County Sheriff and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

**I FURTHER CERTIFY** that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3) unless the plaintiff offers bonafide arguments supporting his appeal.

Dated at Milwaukee, Wisconsin this 16th day of February, 2011.

BY THE COURT:

s/AARON E. GOODSTEIN
United States Magistrate Judge